## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

LYNN EDWARD REECE,      )
              )
      **Plaintiff,**      )
              )
**vs.**              )      **Case No. CIV-05-307-D**
              )
**D. LOW, et al.,**      )
              )
      **Defendants.**     )

## REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner incarcerated at the Federal Correctional Institution in El Reno, Oklahoma ("FCI-El Reno") and appearing pro se, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging the violation of certain constitutional rights, which, according to Plaintiff, affected the status and pay grade of his job in the prison's food service department.  Defendants filed a motion to dismiss (Doc. No. 35) and a separate motion for summary judgment (Doc. No. 34).

By order entered September 28, 2006, Judge Ralph G. Thompson adopted the undersigned's Report and Recommendation and granted Defendants' motion to dismiss based on Plaintiff's failure to exhaust his administrative remedies for *all* claims asserted in the complaint, as required by 42 U.S.C. § 1997e(a) and the then-existing "total exhaustion" rule.  *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004).  Thereafter, the Tenth Circuit Court of Appeals vacated the judgment of this Court and remanded for further consideration in light of the intervening decision by the United States Supreme Court in

*Jones v. Bock*, __U.S.__, 127 S.Ct. 910 (2007), in which the requirement for total exhaustion under § 1997e(a) was rejected, thus abrogating *Ross, supra.* The matter was re-referred to the undersigned for further proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Pursuant to the Circuit Court's direction, the undersigned has reconsidered Defendants' motion to dismiss ("MTD") and Plaintiff's response in light of the Supreme Court's decision in *Jones, supra,* and has also reviewed Defendants' alternative bases for dismissal and the issues raised in Defendants' motion for summary judgment ("MSJ"). For the reasons discussed hereafter, it is recommended that the motion to dismiss be granted in part and denied in part. It is further recommended that Defendants' motion for summary judgment be granted as to those claims not dismissed.

Background

Based upon the complaint and the evidentiary material appended to Defendants' motions, the undersigned finds the following material facts to be undisputed.[1] On June 13, 2002, Plaintiff was assigned to work in the FCI-El Reno food service department, at Pay Grade Four.[2] Defendants' MSJ, Ex. 2, p. 1 (Kitson Declaration) and Attachment 1. On June

---

[1]All material facts listed in Defendants' motion for summary judgment statement of material facts that Plaintiff failed to specifically controvert are deemed admitted. *See* LCvR 56.1(c).

[2]As part of the Inmate Work and Performance Pay program, the BOP has created four pay grade levels for inmates assigned to institutional work assignments. The highest level is Pay Grade One and the lowest level is Pay Grade Four. Defendants' MSJ, pp. 1-2 and Ex. 2 (Declaration of Brian Kitson). According to Defendant Kitson's declaration, the rates for institutional work assignments for Pay Grades One through Four are "$0.40, $0.29, $0.17, and $0.12 respectively." Defendants' MSJ, Ex. 2, p. 2 n.2.

Of the institution's allotted inmate work assignments, approximately five percent are
(continued...)

20, 2002, Plaintiff was assigned to work in the food service category "Seg Carts."  *Id.*  In January 2003, Plaintiff filed a grievance regarding an alleged assault by a prison guard not named in this action.[3]  Complaint, pp. 2 and 6; *see also* Complaint, Appendix, pp. 1-7.  In March 2003 Plaintiff was promoted to Pay Grade Three.  Defendants' MSJ, Ex. 2, pp. 1-2.

In February 2004, Plaintiff was assigned to work in the food service category "pots and pans," and he was promoted to Pay Grade 2.  Defendants' MSJ, Ex. 2, pp. 1-2.  On June 23, 2004, Plaintiff was transferred from the "pots and pans" division to a "dishroom" assignment.  Defendants' MSJ, Ex. 6, p. 1 (Stufflebeam Declaration); *see also* Complaint, Appendix, p. 48 ("Food Service Job Change Request" listing reason for change request as "confrontation").  Plaintiff's grievances concerning the job transfer were denied, and he remained assigned to the dishroom.  Defendants' MSJ, Ex. 4 (Low Declaration).  Plaintiff remained assigned at Pay Grade 2 until August 7, 2004, when he was charged with the offense of "Conduct Which Disrupts Code 399 (Most Like Insolence, Code 312)."  Defendants' MSJ, Exs. 2 (Kitson Declaration), 5 (Lager Declaration) and 7 (Incident Report).  On August 11, 2004, the Unit Disciplinary Committee found Plaintiff guilty of the charged conduct, and the punishment imposed was the loss of a job in food service for one year.  Defendants' MSJ, Ex. 7.  Plaintiff's work status was changed to "work detail unassigned,"

---

[2](...continued)
designated Pay Grade One, fifteen percent are designated Pay Grade Two, twenty-five percent are designated Pay Grade Three and fifty-five percent are designated Grade Four.  Defendants' MSJ, Ex. 1 (Program Statement ("PS") 5251.05, Inmate work and Performance pay), § 545.26.

[3]Plaintiff's grievance action on the excessive force issue continued through April 2003. Complaint, Appendix, p.1.

until October 26, 2004, when he was assigned to UNICOR, an industrial work program. Defendants' MSJ, p. 4 and Ex. 2, p. 2.

Plaintiff asserts three interrelated claims against officials at FCI-El Reno.  In Count One, Plaintiff alleges that Food Service Administrator Dennis Low, Assistant Food Administrator Brian Kitson, and Food Service Cook Foremen Denise Stufflebeam[4] and Ed Lager retaliated against Plaintiff for exercising his right to file grievances by (a) denying job promotions, pay grades and bonuses; (b) implementing a retaliatory job transfer; (c) falsifying a disciplinary charge; and (d) "conspiring to prearrange punishment for the falsified charge" which resulted in Plaintiff's dismissal from his job in food service for one year.  Complaint, pp. 6-8.  In Count Two, Plaintiff alleges that Defendants Low, Kitson, Stufflebeam and Lager implemented practices and procedures that violated his Fifth Amendment right to freedom from racial discrimination and right to equal protection.  *Id.*, pp. 8-9.  In Count Three, Plaintiff alleges that Defendants Low, Kitson and Stufflebeam denied his due process and equal protection rights by making a retaliatory and punitive job transfer.  *Id.*, pp. 10-11.  Plaintiff sues Defendants in their individual capacities, seeking injunctive relief and compensatory, nominal and punitive damages.  *Id.*, p. 13.

## **DISCUSSION**

---

[4]Although Plaintiff spells this Defendant's name as "Stufflebean," the record shows that the correct spelling is "Stufflebeam."

4

I. Defendants' Motion to Dismiss

Defendants seek dismissal of the complaint on grounds of (1) failure to exhaust administrative remedies; (2) qualified immunity; and (3) lack of *respondeat superior* liability in a *Bivens* action.

A.  Standard of Review

Dismissal of a cause of action for failure to state a claim is proper if Plaintiff's complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __U.S.__, 127 S.Ct. 1955, 1974 (2007).  In reviewing the sufficiency of a complaint, all well-pleaded factual allegations of the complaint must be accepted as true and construed in the light most favorable to Plaintiff.  *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).  Further, a pro se plaintiff's complaint should be broadly construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Nonetheless, this broad reading "does not relieve the [pro se] plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

B.  Exhaustion of Administrative Remedies

Defendants seek dismissal of the complaint, arguing that Plaintiff has failed to exhaust his administrative remedies with regard to the claims he seeks to bring against them.  The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner exhaust all available administrative remedies before resorting to an action, such as this one, in which an inmate

challenges the conditions of his confinement.  Specifically, 42 U.S.C. § 1997e(a), provides

that:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

*Id.*  In *Jones v. Bock*, __U.S.__, 127 S.Ct. 910, 918-19 (2007), the United States Supreme

Court held that failure to exhaust is an affirmative defense under the PLRA and that the

burden of demonstrating a plaintiff's failure to exhaust administrative remedies rests on the

defendants.    Additionally, the Supreme Court concluded that when a district court is

presented with a complaint containing both exhausted and unexhausted claims, the district

court should employ the "more typical claim-by-claim approach" and dismiss only those

claims which are not exhausted.  *Id.* at 926.

Defendants' motion to dismiss, grounded in part on Plaintiff's failure to exhaust,

includes Plaintiff's grievance records.[5]  Thus, Defendants have assumed the burden of

establishing Plaintiff's failure to administratively exhaust his claims before bringing his

action in this Court.  Plaintiff responded to the motion, and the question of whether

Defendants have met their burden of proving that Plaintiff's claims are unexhausted is again

properly before the Court.  For the reasons discussed below, the undersigned finds that

---

[5]Numerous copies of administrative documents are also attached to the complaint and will
be referred to as appropriate.  In deciding whether to dismiss a claim for nonexhaustion, the Court
can consider the "administrative documents" without converting the motion to one for summary
judgment.  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in
part on other grounds*, *Jones v. Bock*, __U.S.__, 127 S.Ct. 910 (2007).

Plaintiff has only exhausted part of the claims raised in his complaint, and therefore Defendants' motion to dismiss should be granted in part and denied in part.

As a federal prisoner, Plaintiff was required to pursue his claims through the administrative remedy program established by the Bureau of Prisons ("BOP") before initiating his lawsuit. *See* 28 C.F.R. §§ 542.10-542.18; *see also Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir. 2005). Under the BOP regulations, an inmate must first attempt to resolve his complaint informally with prison staff. 28 C.F.R. § 542.13(a). If an informal resolution is not reached, the inmate may then direct his complaint to the warden through a written administrative remedy request. *Id.*, §§ 542.13, 542.14. Inmates are instructed to "place a single complaint or a reasonable number of closely related issues on the form." 28 C.F.R. § 542.14(c)(2). If the request is denied by the warden at the local institutional level, the inmate may submit an appeal to the appropriate Regional Director. *Id.*, § 542.15(a). The inmate may file a final administrative appeal to the Office of the General Counsel ("Central Office") in Washington, D.C. This appeal to the Central Office is the last step in the administrative process.

1. Exhaustion of Retaliation Claims - Count One

In Count One Plaintiff alleges that Defendants Low, Kitson, Stufflebeam, and Lager retaliated against him for exercising his right to file a grievance; however, Plaintiff alleges different retaliatory conduct as to each Defendant.

a.  <u>Defendants Low and Kitson</u>

Plaintiff claims that Defendants Low and Kitson retaliated against him by refusing to promote Plaintiff to a higher pay grade because he filed a grievance against another prison officer in January 2003.  Complaint, p. 6.

In the previous Report and Recommendation filed prior to *Jones*, the undersigned found that Plaintiff failed to exhaust the administrative process related to this claim.  In his order adopting that recommendation, Judge Thompson agreed that Plaintiff had not exhausted his retaliation claim against Defendants Kitson and Low.  Order [Doc. No. 45], pp. 3-4 (finding that Plaintiff's September 2003 grievance concerning pay inequities "is silent concerning his current allegation that Defendants Kitson and Low were retaliating against him for earlier grievances").   Nothing in *Jones* changes the previous determination by this Court that Plaintiff has failed to exhaust his administrative remedies with respect to his claim in Count One against Defendants Kitson and Low.  Accordingly, because as discussed in the prior Report and Recommendation, Plaintiff's grievances failed to alert prison officials to a claim that the denial of promotion and pay raises was the result of retaliation by these Defendants, the undersigned recommends that the motion to dismiss for failure to exhaust be granted with respect to the retaliation claims in Count One against Defendants Low and Kitson.  *Jones*, 127 S.Ct. at 923 ("All agree that no unexhausted claim may be considered.").

8

Such dismissal should be without prejudice.  *See Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) ("'[a] dismissal based on lack of exhaustion . . . should ordinarily be without prejudice'") (citation omitted).

b.  Defendants Lager and Stufflebeam

Plaintiff also alleges in Count One that Defendant Stufflebeam retaliated against him for exercising his right to submit grievances by transferring him to a different job assignment and that Defendant Lager retaliated against him for filing grievances by falsifying a disciplinary charge against him.  Complaint, pp. 7-8.  According to Plaintiff, "[t]hese adverse actions were substantially motivated by Plaintiff being stigmatized as a 'grievance writer.'"  *Id.*, p. 7.

The record shows that Plaintiff completed the four-step grievance process with respect to his claim against Defendant Stufflebeam.  *See* Defendants' MTD, Exs. 2 (No. 342115) and 3 (No. 342116); *see also* Complaint, Appendix, pp.37-56  (No. 342115) and pp. 25-36 (No. 342116).  Additionally, Plaintiff completed the grievance procedure with respect to his claim of retaliation against Defendant Lager.  Defendants' MTD, Exs. 4 (No. 350643), 5 (No. 351712) and 6 (No. 366853); *see also* Complaint, Appendix, pp. 57-69 (No. 351712).  Based on the record, the undersigned finds that Plaintiff has exhausted his administrative remedies with respect to his claims of retaliation against Defendants Stufflebeam and Lager.

Accordingly, the motion to dismiss for failure to exhaust the claims in Count One as to Defendants Stufflebeam and Lager should be denied.[6]

   2. Exhaustion of Racial Discrimination/ Equal Protection Claim - Count Two

  In Count Two Plaintiff alleges Defendants Low, Kitson, Stufflebeam and Lager discriminated against him based on his race,[7] violating his right to equal protection of the law.  Complaint at 8.

   a. Defendants Low and Kitson

  According to Plaintiff, between 2002 and 2004 food service administrators placed white inmates in better and higher paying jobs in the food service department than similarly situated black inmates.  Complaint, pp. 8-9.  Judge Thompson previously determined that Plaintiff had "fairly presented his claim of a racially discriminatory pay system at each level of the administrative process" and thus had sufficiently exhausted his claim in Count Two against Defendants Low and Kitson.[8]  Order at 4-5 [Doc. No. 45].[9]  Nothing in *Jones* affects

---

  [6]Although Plaintiff states that Defendants "conspir[ed] to prearrange punishment for the falsified charge," he fails to include any facts supporting a conspiracy between Defendants Stufflebeam and Lager.  Complaint, p. 6, Count One, § C (A)(1)(d). Moreover, his retaliation claims are based on allegations of separate acts of retaliation on separate dates by these two defendants. Therefore, the undersigned finds that Plaintiff's brief unsupported reference to a conspiracy fails to state a claim of constitutional dimension, and it is therefore unnecessary to determine whether Plaintiff has sufficiently exhausted a claim of involving conspiracy.

  [7]The only indication in the record regarding Plaintiff's race is his reference to himself in his reply as "a Black male prisoner."  *See* Plaintiff's Reply, p. 5.

  [8]The grievance documents in which Plaintiff complained that Defendants Low and Kitson failed to promote Plaintiff to a higher level in food service show his claims in this regard focused on his allegation that the pay for his job was disproportionate to other pots and pans workers in the federal prison system and that the pay he was receiving was not consistent with the physical
(continued...)

the previous determination by Judge Thompson that this issue has been exhausted. Accordingly, Defendants Low and Kitson are not entitled to dismissal of the claim against them in Count Two for failure to exhaust.

### b. Defendants Stufflebeam and Lager

In his complaint Plaintiff alleges that Defendants Stufflebeam and Lager "have made the majority of all of the arrests in food service in the last two years [and] fewer than 1% have been white inmates." Complaint at 9. Although this reference to "arrests" is less than clear, it appears Plaintiff is alleging that Defendants Stufflebeam and Lager have disciplined and/or transferred more black or minority inmates than nonblack inmates. Plaintiff further claims that on June 23, 2004, Defendant Stufflebeam transferred Plaintiff to a less desirable job in the dishroom – without following institutional policy – as part of her overall practice to "discriminate and retaliate against inmates for writing grievances," and such conduct has been allowed by Defendant Low. *Id.*

---

[8](...continued)
demands the job demanded. Defendants' MTD, Ex. 1. However, he also briefly referenced certain facts indicating that the "PM" shift of pots and pans workers, who were placed in a higher pay grade, were "nonblack." *Id.*

[9]Judge Thompson noted that in *Kikumura v. Osagie*, 461 F.3d 1269 (10th Cir. 2006), the Tenth Circuit analyzed the PLRA's exhaustion requirement in connection with the BOP's administrative remedy program and adopted a standard "'which requires inmates to provide enough information in their grievances for prison officials to address the complaint internally.'" Order, p. 3 [Doc. No. 45] (quoting *Kikumura*, 461 F.3d at 1285). The Tenth Circuit has since recognized that the portion of *Kikumura* utilizing the motion to dismiss standard derived from *Conley v. Gibson*, 355 U.S. 41 (1957) was recently overruled by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, __U.S.__, 127 S.Ct. 1955 (2007). *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). However, the motion to dismiss standard set forth in *Twombly* does not change the Tenth Circuit's holding in *Kikumura* as to the sufficiency of a prisoner's grievance in satisfying § 1997e(a)'s exhaustion requirement.

Following his transfer to the dishroom job and a reduction in pay level, Plaintiff sought informal administrative relief, alleging that he had a liberty interest in his prison job and the minimal procedural safeguards of due process had not been observed prior to what he referred to as the "punishment," *i.e.*, job transfer.  Complaint, Appendix, pp. 25-26.  He further alleged that Stufflebeam used her power as a "discriminatory tool," victimizing "Blacks and Hispanics" while not treating white inmates in the same manner.  *Id.*, p. 25.  Defendant Low's response to the informal request made no mention of Plaintiff's allegation of discrimination and affirmed Defendant Stufflebeam's decision to transfer Plaintiff to the dishroom but determined that Plaintiff's pay grade would remain at Pay Grade 2 rather than be reduced.  *Id.*, p. 27.  In his appeal to the warden, which was denied, Plaintiff continued his claim that Stufflebeam made a retaliatory job transfer without following policy and procedure, but he did not include a claim of discrimination.  *Id.*, pp. 29-31.  Plaintiff's regional appeal was based on a violation of due process and the response addressed Plaintiff's allegations that his job transfer was retaliatory.  *Id.*, pp. 33-34.  In his final appeal to the Central Office, which was denied, Plaintiff again alleged a due process violation but also included an allegation that "these kinds of moves are only implemented against Black and Hispanic inmates here."  *Id.*, pp. 36-37.

The Tenth Circuit has explained that a grievance need not "lay out the facts, articulate legal theories, or demand particular relief."  *Kikumura*, 461 F.3d at 1283.  Instead, a grievance satisfies the exhaustion requirement "so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally."  *Id.* at

1282-85.  During the four-step administrative remedy process, even though Plaintiff did not raise a claim of discrimination at every level, he included several allegations that the job transfer by Stufflebeam without following the proper procedure was indicative of her practice to discriminate.  Such references to discrimination, as described above, should have put officials on notice of a racial discrimination claim against Defendant Stufflebeam. Therefore, the undersigned finds that Plaintiff has exhausted his racial discrimination claim against Defendant Stufflebeam, and the motion to dismiss on this basis should be denied.

However, a different result is reached with respect to Plaintiff's racial discrimination claim against Defendant Lager.  As previously discussed in connection with Plaintiff's exhaustion of his retaliation claim against Defendant Lager, the record shows that following Defendant Lager's written incident report Plaintiff pursued the four-step administrative process alleging that Lager had retaliated against him, but these administrative documents lack any allegations or facts that would put officials on notice of a racial discrimination claim against Lager.  *See* Defendants' MTD, Exs. 4 (No. 350643), 5 (No. 351712) and 6 (No. 366853); *see also* Complaint, Appendix, pp. 57-69 (No. 351712).  Therefore, the undersigned finds that Plaintiff's racial discrimination claim against Defendant Lager has not been administratively exhausted, and the motion to dismiss for failure to exhaust this claim should be granted.

3. <u>Exhaustion of Due Process Claim - Count Three</u>

In Count Three Plaintiff alleges that he was subjected to a retaliatory and punitive job transfer on June 22, 2004, by Defendants Low, Kitson and Stufflebeam, without due process and in violation of his right to equal protection.  Complaint, p.10.

Defendants allege that Plaintiff failed to initiate his administrative remedies challenging the staff's failure to give him proper notice of the job re-assignment. Defendants' MTD, p. 17.  However, the record shows otherwise, at least with respect to Defendant Stufflebeam.  On June 22, 2004, Plaintiff initiated an informal resolution form alleging that Defendant Stufflebeam removed him from his pots and pans job in Food Service and reassigned him to "PM dishroom," a lower paying job, without following policy and in violation of his due process rights.  Complaint, Appendix, pp. 25-26.[10]  On July 6, 2004, Food Service Administrator Low responded that the matter involved a "verbal altercation" with Plaintiff's "cook foreman" which was "informally resolved" and for which no incident report had been filed.  *Id.*, p. 27.  Low further advised Plaintiff that he had reviewed Stufflebeam's recommendation that Plaintiff's pay grade be reduced from Pay Grade 2 to a Pay Grade 4 and had determined that Plaintiff would remain at Pay Grade 2 and that he would remain assigned to the dishroom.  *Id.*  Plaintiff appealed the matter to the Regional Director, which appeal was denied.  *Id.*, pp. 33-34.  Finally, Plaintiff filed an appeal with the Central Office, and on December 10, 2004, his appeal was denied.  *Id.*, pp. 35-37.

---

[10]Plaintiff specifically alleged that the job transfer amounted to "punishment" that was imposed by Defendant Stufflebeam without prior written notice, a hearing, an opportunity to defend or produce evidence to support a defense, without a written statement of the evidence and reasons supporting the decision made.  Complaint, Appendix, p. 25.

After reviewing the administrative record, the undersigned finds that Plaintiff has exhausted his due process claim in Count Three with respect to Defendant Stufflebeam. Accordingly, Defendant Stufflebeam is not entitled to dismissal of the claim in Count Three based on failure to exhaust, and this claim is addressed *infra* on the merits.  However, the same documents referenced above make no mention of Defendants Low and Kitson or any conduct that could be attributed to them.  Inmates are not required to "specifically identify the wrongdoers in their initial grievance." *Kikumura*, 461 F.3d at 1284.  Here, Plaintiff never notified prison authorities through the administrative process as to what particular actions were alleged as to Low and Kitson's personal involvement in the due process violation or facts alleging that they were liable as supervisors who approved, authorized, or ratified unconstitutional action by Defendant Stufflebeam.  Therefore, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as to the due process claim in Count Three against these two Defendants.  Accordingly, it is recommended that the motion to dismiss for failure to exhaust administrative remedies be granted as to Defendants Low and Kitson and that these claims be dismissed without prejudice.  *Kikumura*, 461 F.3d at 1290.

Summary With Respect to Exhaustion of Claims

The undersigned finds that Defendants have not met their burden of establishing that Plaintiff failed to exhaust his administrative remedies as to his claims of retaliation against Defendants Stufflebeam and Lager in Count One, his claims of racial discrimination against

Defendants Low, Kitson and Stufflebeam in Count Two and his due process claim against Defendant Stufflebeam in Count Three.  Accordingly, the undersigned finds that Defendants are not entitled to dismissal of these claims for failure to exhaust administrative remedies.

However, the undersigned finds that the prior determination by this Court that Plaintiff failed to exhaust his administrative remedies as to his claims of retaliation against Kitson and Low in Count One is unaffected by the decision in *Jones* and the motion to dismiss should be granted on this basis.  Further, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as to his racial discrimination claim against Defendant Lager in Count Two and his due process claim against Defendants Low and Kitson in Count Three.  Accordingly, the motion to dismiss for failure to exhaust administrative remedies should be granted as to these claims.[11]

II.  Defendants' Motion for Summary Judgment - Plaintiff's Remaining Claims

Defendants have also moved for summary judgment on the merits of Plaintiff's claims.  [Doc. No. 34].  Pursuant to the discussion above, those claims that remain for summary judgment analysis include (1) Plaintiff's claim of retaliation in Count One against Defendants Stufflebeam and Lager; (2) his claim of racial discrimination in Count Two

---

[11]As discussed *infra*, Defendants are entitled to summary judgment on those claims that have been exhausted administratively because Plaintiff fails to meet his burden to show that his constitutional rights have been violated.  Accordingly, it is not necessary to evaluate Defendants' contentions in the motion to dismiss that they are entitled to qualified immunity or that Defendant Low is not liable in his supervisory capacity.

against Defendants Low, Kitson, and Stufflebeam; and (3) his due process claim in Count Three against Defendant Stufflebeam.

In addressing the remaining claims, the undersigned initially notes that although Plaintiff has set forth three separate legal bases for relief, all of his claims are essentially taken from the same set of circumstances – his transfer to a less desirable food service job and the disciplinary charge resulting in the loss of his food service job. Plaintiff first attributes his prison job assignments and a lack of promotions to Defendants' alleged retaliation for his filing of grievances. Plaintiff then alleges that the same set of facts regarding his prison employment support a claim of racial discrimination, attributing a different motivation to Defendants. Finally, he alleges that the facts concerning his job transfer show that his due process rights were violated. The undersigned finds that Plaintiff has failed to show that a genuine issue exists as to any material fact related to any of these claims, and Defendants are therefore entitled to judgment as a matter of law.

A. Standard of Review

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Calhoun v. Gaines*, 982 F.2d

17

1470, 1472 (10th Cir. 1992); *Manders v. Oklahoma*, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

The moving party need not affirmatively negate the nonmovant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement. *Anderson*, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (interior quotes omitted).

B. <u>Retaliation - Count One - Defendants Stufflebeam and Lager</u>

Plaintiff alleges that Defendant Stufflebeam retaliated against him for filing grievances by transferring him on June 23, 2004, to a lower status job in food service without

following food service department procedures.  Complaint at 7.[12]  Plaintiff also alleges that

Defendant Lager wrote a false incident report on August 7, 2004, because Plaintiff exercised

his right to file grievances against "Stufflebeam, Low and Kitson for racial discrimination,

denial of equal protection, denial of due process and retaliation against Plaintiff for the

exercise of his First Amendment right to file a prison grievance."  *Id.*  As further evidence

of retaliation, Plaintiff alleges that even though he had been promoted to Pay Grade Two in

April 2004, Defendants Stufflebeam and Lager "continuously reduced Plaintiff's salary until

the salary was as if there had never been a promotion" and these "adverse actions were

substantially motivated by Plaintiff being stigmatized as a 'grievance writer.'" *Id.* at 7.

    Prison officials may not retaliate against or harass an inmate in retaliation for the

inmate's exercise of his constitutional rights, even where the action taken in retaliation would

be otherwise permissible.  *Smith v. Maschner*, 899 F.2d 940, 947-48 (10th Cir. 1990). "This

principle applies even where the action taken in retaliation would be otherwise permissible."

*Id.* at 948.  To prevail on a retaliation claim, a prisoner must show that the challenged actions

would not have occurred "but for" a retaliatory motive. *Id.* at 949-50 (a plaintiff must prove

"that the actual motivating factor behind defendants' actions was retaliation for his prior or

current litigation"). In some cases, a retaliatory motive may be established by circumstantial

---

[12]Plaintiff alleges that the job change request form provides that an individual staff member may not arbitrarily terminate an inmate's employment or transfer an inmate to another job; rather, the form indicates such recommendation must be approved by appropriate prison officials and must be signed by the inmate.  Complaint at 9 (citing Appendix, p. 48 ("Food Service Job Request" form)).  Plaintiff alleges that Stufflebeam effectuated the job transfer by signing the form herself, bypassing the procedural requirements of the food service department form.  *See* Complaint, Appendix, p. 48.

evidence, including a showing of protected conduct followed in close proximity by an adverse action.  *See Smith v. Maschner*, 899 F.2d at 948-49 (finding "suspicious timing of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern by defendants of blocking his access to legal materials and assistance" sufficient to preclude summary judgment for defendants on plaintiff's retaliation claim).

Plaintiff attempts to establish Defendant Stufflebeam's retaliatory motive by claiming close temporal proximity between grievances he had filed and the job transfer on June 23, 2004.  In his complaint he alleges he submitted a grievance against Defendants Low and Kitson in September 2003 concerning unequal treatment in food service and that after the final appeal of this grievance was completed in March 2004, Defendant Stufflebeam "reduced Plaintiff's pay" for the next four months even though he had been promoted to Pay Grade 2.  Complaint, p. 7.  He also alleges that Stufflebeam attempted to "fire" him on June 22, 2004, and transferred him to the dishroom the next day, and that these "adverse actions were substantially motivated by Plaintiff being stigmatized as a 'grievance writer.'"  *Id.*; *see also* Complaint, Appendix, p. 51 (alleging in administrative appeal that "retaliatory animus is obvious or at least should be inferred from the chronology of adverse actions taken in proximity to the filings of grievances").  Even assuming these allegations demonstrate a temporal proximity between Plaintiff's filing of grievances against prison staff generally[13]

---

[13]The record shows that following the excessive force grievance he filed in January 2003, Plaintiff also filed multiple other administrative remedy grievances concerning the interrelated issues raised in the instant complaint, many of which, considering Plaintiff's appeal process, overlapped in time between January 2003 and December 2004.  Complaint, Appendix, Exs. 1-69.

and his reduction in pay and transfer to another job in food service, so as to establish a prima facie case of retaliation against Defendant Stufflebeam, he fails to show that any of the other circumstances that existed in *Smith* occurred here.

In her sworn declaration, Defendant Stufflebeam states that on June 22, 2004, Plaintiff confronted her in a verbal exchange which she perceived as threatening. Defendants' MSJ, Ex. 6, p. 1. Stufflebeam further states that she decided not to resort to formal discipline but rather to handle the matter informally by seeking assistance from an officer on duty and by reassigning Plaintiff to a different job within food service. *Id.* Stufflebeam avers that "[t]he decision to move plaintiff was not in retaliation for his administrative filings; the move was made in consideration for prison security, *i.e.*, separation of plaintiff from the officer threatened [which] reduced the opportunity for further confrontation." *Id.*, p. 2. In response to Plaintiff's administrative grievance concerning his job transfer, Defendant Low affirmed Stufflebeam's decision to move Plaintiff within the food service department to the dishroom rather than issue an incident report but concluded that Plaintiff's pay grade would remain at Pay Grade 2.[14] Complaint, Appendix, p. 42.[15] Stufflebeam's transfer of Plaintiff to another position was upheld through all steps of the administrative process. Complaint, Appendix, pp. 46, 51 and 54. On this record, the undersigned finds that Defendant Stufflebeam's

---

[14]Although it is not reflected in the Food Service Job Change Request form, Complaint, Appendix, p. 48, it appears that Stufflebeam also recommended that Plaintiff's pay grade be reduced from Pay Grade Two to Pay Grade Four. Complaint, p. 7; *see also* Complaint, Appendix, p. 42.

[15]Plaintiff was also cautioned that his "behavior and adjustment [would] continue to be monitored, and that any future disruptive conduct . . . would result in an incident report, if warranted." Complaint, Appendix, p. 42.

proffered reason for Plaintiff's reassignment within food service and the rulings during the administrative remedy process negates any inference of retaliation that may be drawn from temporal proximity.

In response, Plaintiff argues that the very fact that Defendant Stufflebeam recommended that his pay grade be reduced, in addition to the job transfer, raises a fact issue as to "whether the transfer was retaliatory." Plaintiff's Reply, p. 6. According to Plaintiff, the job transfer was "punitive" and did nothing to accomplish "separation" as stated by Stufflebeam. *Id.*, p. 5. However, Plaintiff does not directly dispute that he verbally confronted Stufflebeam on June 22, 2004. Rather, he essentially maintains that "there is no evidence" to support Stufflebeam's assertion that she felt threatened.[16] In addition, although Plaintiff claims that Stufflebeam reassigned him in retaliation for his filing of grievances of Low and Kitson, there is no evidence that Stufflebeam, a cook foreman, knew of the grievances against the food service administrators. Without such knowledge, there is no inference of retaliatory conduct. *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1265 (10th Cir. 1998) (holding that retaliatory discharge claim must be predicated on intentional retaliation).

In short, Plaintiff presents no evidence other than his conclusory assertion that Stufflebeam's recommendation for a reduction in pay showed a retaliatory intent. As a

---

[16]Plaintiff points to the fact that Stufflebeam did not immediately alert Food Administrator Low about the confrontational behavior by Plaintiff, that she chose to informally resolve the matter, that she wrote no incident report, that she did not require other officers to speak to Plaintiff about his behavior and no other officers had sensed a need to remove him from his job. Plaintiff's Reply, p. 5.

result, the undisputed facts regarding the June 23, 2004, incident are just as consistent with Stufflebeam's claim of a confrontation perceived as a threat as Plaintiff's claim of retaliation. The undersigned therefore finds that Plaintiff has failed to present evidence that "but for" the retaliatory motive, the alleged action – his job transfer – would not have taken place. *Smith v. Maschner*, 899 F.2d at 947. Accordingly, the undersigned finds that Plaintiff has failed to create any issues of material fact with respect to his claim of retaliation against Defendant Stufflebeam, and it is recommended that Defendant Stufflebeam be granted summary judgment on this claim.[17]

Plaintiff's claim of retaliation against Defendant Lager focuses on the incident report written by Lager on August 7, 2004. Complaint, pp. 4-5 and pp. 7-8. Plaintiff claims that the charge in the incident report was false and was written in retaliation for Plaintiff's grievance against Defendant Stufflebeam, which he refused to drop, and Lager's alleged

---

[17]Similarly, Plaintiff fails to support his additional claim that Defendants Stufflebeam and Lager retaliated for his grievance filings by "continuously reduc[ing]" his salary for three months following his promotion to Pay Grade Two. A review of Plaintiff's pay chart shows that he was assigned to Pay Grade Level Two during the months of March through August 2004, and that while his pay was somewhat less each month, he did receive bonus pay for three of these six months. As discussed *infra*, Food Administrator Kitson avers that the differences in total month pay for each inmate may vary based on (1) the number of hours worked by the inmate, or (2) the amount of bonus pay earned by meritorious performance. Defendants MSJ, Ex. 2, p. 5. Kitson further states that "bonus pay may be recommended by the work detail supervisor when the supervisor believes the inmate has made exceptional accomplishments or appreciably contributes to the work assignment," such as working in excess of the scheduled work day. *Id.*, p. 4. Plaintiff has failed to make any allegations related to the number of hours he worked or any additional or "exceptional" work he performed that might have merited bonus pay that he did not receive, much less any facts showing how his pay during this period of time was linked to his filing of grievances.

romantic involvement with Stufflebeam.  Complaint, p. 5.[18]  Lager's incident report sets forth

the following facts:

> On 8/7/04 at approx[imately] 3:35 p.m., inmate Reece came up to me and said,
> "Hey I think what Ms. Stufflebeam did to me was wrong."  He said, "Everyone
> in El Reno drinks and parties together and nobody in El Reno is going to help
> because they're all hometown."  He appeared very angry and agitated.  He was
> holding his hands in front of him and pointing them at me as he talked.  He
> said, "I think I know policy better than she does and I'll take it to Washington
> and she needs her job more than I need mine."  Mr. Reece's voice was raised
> as he was talking to me, and other inmates in the area were able to hear what
> he said.  The last thing he told me was that he was going to get her job and that
> his bills will always be paid.  Several inmates paused in their duties to listen
> to what he was saying.  Inmate Reece's comments were disruptive and
> disrespectful as he made them where other inmates could overhear.

Defendants' MSJ, Ex. 7.  The administrative documents relating to the incident report show

that Plaintiff was convicted on the basis of Defendant Lager's report and based on Plaintiff's

admission that he did talk to Lager about the "officer," *i.e.*, Stufflebeam.  *Id.*[19]  Additionally,

---

[18]As factual background to Defendant Lager's actions, Plaintiff alleges the following:

On July 26, 2004, Kitson walks from his office to C-Unit Building where Reece is
housed . . . to have a meeting with Reece's Unit Counselor, Mr. B. Rout.  A closed
door discussion takes place in another Counselor's office.  The discussion is
overheard by others.  Kitson tells Rout "There are other grievances in my office
recently filed against Stufflebea[m] and they all have Reece's MO on them."  "We
need to get Reece out of the kitchen, because I can't do my job for answering these
complaints."  Rout tells Kitson "Well, my hands are tied; I need an incident report
to do anything about it.  Can't you guys handle that up there?"  July 31st, 2004,
Kitson has a meeting with Stufflebeam and Lager, who functions as "attack dogs"
for Kitson.  Later that day (3 pm) Lager stops Reece and tries to proposition Reece
into dropping his complaints against Stufflebea[m].  Reece doesn't accept the offer.

Complaint, p. 4.

[19]The disciplinary committee also noted that at the disciplinary hearing Plaintiff stated that
Lager tried to get Plaintiff to drop his complaint about the "officer" and that he (Plaintiff) made no

(continued...)

Defendant Lager has submitted a sworn declaration that the misconduct report was not based on retaliation for Plaintiff's administrative filings but was based on Plaintiff's own actions, *i.e.*, his "loud, angry and agitated [comments] while speaking to [Lager] about another staff member" which "caus[ed] nearby inmates to stop working and observe his insolent behavior."  Defendants' MSJ, Ex. 5.

In response, Plaintiff attempts to create an issue of material fact as to whether Lager's actions amounted to retaliation for Plaintiff's filing of grievances by asserting that there is "no credible evidence to support Defendant Lager's misconduct report."  Plaintiff's Reply, p. 9.  In support Plaintiff points to the lack of witnesses to the alleged incident, the lack of affidavits or statements supporting Lager's accusation and the absence of a security camera tape showing the incident.  *Id.*[20]  However, Plaintiff's argument in this regard fails to demonstrate that "but for" Defendant Lager's retaliatory motive, the incident report would not have been issued.  Moreover, to the extent Plaintiff claims Lager's retaliatory conduct flowed from a conversation "overheard" between Kitson and Plaintiff's Unit Counselor, Mr. Rout, on July 26, 2004, and a later meeting on July 31, 2004, between Kitson, Stufflebeam

---

[19](...continued)
comments concerning Stufflebeams' job.  Defendants' MSJ, Ex. 7.

[20]Plaintiff claims that the only evidence the disciplinary hearing officer relied on in finding him guilty of the misconduct was the "false charge" written by Defendant Lager.  According to Plaintiff, even though many inmates and officer work in food service, there were no witnesses to the incident, there were no security camera tapes offered, nor affidavits or statements introduced to support the accusation.  Plaintiff's Reply at 9.  To the extent Plaintiff attempts to create a disputed fact over whether there were even any inmates in the area, he makes no attempt to support such inference with any affidavits or evidence concerning the activities in that area of the prison at the time.

and Lager, he wholly fails to support such allegation with evidence.[21]  In light of Defendant

Lager's sworn declaration, the undersigned finds that Plaintiff has failed to respond to

Defendants' preferred evidence as to Defendant Lager's motivation in issuing the incident

report.  Accordingly, it is recommended that summary judgment be granted to Defendant

Lager on Plaintiff's claim of retaliation in Count One.

     C.  <u>Racial Discrimination Claim - Count Two</u>

     In Count Two Plaintiff alleges that Defendants Low, Kitson, and Stufflebeam and

Lager "implemented practices and procedures" that violated his Fifth Amendment right to

freedom from racial discrimination and his right to equal protection.  Complaint, p. 8.

     "[T]he Due Process Clause of the Fifth Amendment contains an equal protection

component prohibiting the United States from invidiously discriminating between individuals

or groups."  *Washington v. Davis*, 426 U.S. 229, 239 (1976).  *See also United States v.

McHorse*, 179 F.3d 889, 897 n.1 (10th Cir. 1999) ("While the Fifth Amendment contains no

equal protection clause, the equal protection standards of the Fourteenth Amendment are

incorporated into the Fifth Amendment's promise of due process.") (citation omitted).  Racial

segregation, which is unconstitutional outside prisons, is unconstitutional within prisons,

save for "the necessities of prison security and discipline."  *Lee v. Washington*, 390 U.S. 333,

334 (1968) (*per curiam*).  Thus, although prisoners have no constitutional right to a particular

prison job, officials may not discriminate in job assignments based on age, race, or disability.

---

[21]In one of his administrative remedy actions, Plaintiff claimed that the conversation on July 26, 2004, between Kitson and Unit Counselor Rout was "overheard" by two unidentified "individuals." Complaint, Appendix, p. 49 (Regional Appeal, Case No. 342115-R1).

*See Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986). "The substantive law forbids racial discrimination in the delegation of job assignments to inmates." *Williams v. Meese*, No. 92-3391, 1993 WL 53539, *3 (10th Cir. Feb. 18, 1993) (unpublished decision) (citation omitted). "In order to find racial discrimination, the substantive law also requires a showing that a discriminatory purpose was the motivating factor." *Id.* (citation omitted). Therefore, "any dispute about the number or percentage of black inmates working in clerical positions is . . . irrelevant. Only genuine facts, not mere conclusions that go to the intent of the prison officials in the job selection process, are relevant." *Id.* at *2.

In *Mallard v. Tomlinson*, No. 06-6019, 2006 WL 3059939 (10th Cir. Oct. 31, 2006) (unpublished decision), a Colorado inmate brought a similar claim of racial discrimination and the Tenth Circuit applied the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The Circuit Court reasoned:

> While *McDonnell Douglas* involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981, as well as to § 1983 claims based on allegations of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

*Id.* at *3 (citing *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001)). In *Mallard*, the Court determined that

> [i]n order to survive summary judgment, a plaintiff relying on *McDonnell Douglas* bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action. Once the plaintiff has established a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for taking an adverse employment action against the plaintiff. If the defendant successfully meets its burden of production, the

> burden shifts back to the plaintiff to put forth evidence sufficient to allow a
> jury to find that the defendant's reason is pretextual, e.g., that it is unworthy
> of belief.

*Id.* (quoting *English*, 248 F.3d at 1008).  *See also Williams v. Federal Bureau of Prisons and Parole Com'n*, No. 00-1986, 2004 WL 50779 (3rd Cir. Jan. 7, 2004) (unpublished decision) (applying *McDonnell Douglas* framework in *Bivens* claim of employment discrimination in federal prison setting); *Hadley v. Taylor*, No. 00-2020, 20 Fed.Appx. 517 (7th Cir. Sept. 10, 2001) (unpublished decision) (with no direct evidence of discrimination, a state inmate pursuing an action under § 1983 was required to prove his claim of racial discrimination with regard to jobs in the prison library under the *McDonnell Douglas* framework).


### 1. Racial Discrimination Claims Against Defendants Low and Kitson

Plaintiff contends that Defendant Low and Kitson maintain a racially discriminatory pay system.  Complaint, p. 8 ("White inmates are placed on better and higher paying jobs than Black inmates in this department.").  According to Plaintiff, between 2002 and 2004, he was informed by food service staff that he could not receive a promotion because of budgetary restraints, and yet white inmates were being promoted to higher paying positions, some of whom had less experience in the food department than Plaintiff.  *Id.*, pp. 8-9.[22]

---

[22]Plaintiff makes further allegations in the Nature of the Case portion of the complaint. There, he alleges that after two years of working in food service, he had received only one promotion and "[o]ther inmates 'similarly situated' were being promoted to grade 1 within six months, and were getting three promotions within six months to 9 months."  Complaint, p. 2. According to Plaintiff, "[t]here is no system about promotions; it is at the discretion of the Food Administrators."  *Id.*  Plaintiff further states that "[s]ome inmates [White inmates] were awarded (continued...)

Defendants contend Plaintiff's equal protection claim of racial discrimination is without merit because there is no evidence of racial animus in promotions in the FCI-El Reno food service department.

As previously stated, the BOP has created four pay grade levels for inmates assigned to institutional work assignments. The lowest level is Pay Grade Four and the highest level is Pay Grade One.  Defendants' MSJ, pp.1-2 and Ex. 2 (Declaration of Brian Kitson). According to BOP regulations, the approximate percentage of inmates assigned to each grade level has been established in light of "budgetary restraints" and "the effective management of the overall performance pay program."  Defendants' MSJ, Ex. 1, (BOP Program Statement ("PS") 5251.05, Inmate Work and Performance Pay).  The relevant BOP regulation provides that work assignments shall be made with "consideration of the institution's security and operational needs, and should be consistent with the safekeeping of the inmate and protection of the public."  Defendants' MSJ, p.2 (citing Ex. 1, PS 5251.05, § 545.23(8)(d)).  The BOP requires that in making work assignments, staff shall consider "the inmate's ability to learn, interests, requests, needs, and eligibility, and the availability of the assignments." *Id.*

As previously noted, Plaintiff states that he is a black man, and he therefore is a member of a protected class.  Also, it is not disputed that Plaintiff's performance in food service had been satisfactory.  Plaintiff alleges that during the relevant time period food service administrators Low and Kitson failed to promote him, claiming budgetary constraints,

---

[22](...continued)
grade 2 or grade 1 from the start.  *Id.*  Additionally, he asserts that "[i]nformers and white inmates are paid higher salaries and are assigned to the best jobs."  *Id.*

while white inmates with less experience were promoted.  Complaint, p. 2, pp. 4-5 and pp. 8-9.

Assuming, for the sake of argument, that Plaintiff has established a prima facie case of racial discrimination, Defendants Low and Kitson have articulated a legitimate, nondiscriminatory reason for Plaintiff's job assignments and pay grade levels in food service. Defendant Kitson avers that in his position as assistant food service administrator at FCI - El Reno, he must keep inmate performance pay ("IPP") within the allotted budget and therefore IPP must occasionally be adjusted to meet budgetary constraints.  Defendants MSJ, Ex. 2, p. 2 (Declaration of Brian Kitson).[23]  Kitson also establishes that the differences in total month pay for each inmate may vary based on (1) the number of ours worked by the inmate, or (2) the amount of bonus pay earned by meritorious performance.  *Id.*, p. 5. According to statistics presented by Defendants, the top two pay grades in food service are comprised of approximately 47 percent African American inmates, with 64 percent comprising Pay Grade One and 35 percent comprising Pay Grade Two.  *Id.*, p. 6.  Kitson includes a pay comparison chart that shows that when Plaintiff was working at Pay Grade 3 in June 2003, other similarly situated inmates received the same hourly wage as Plaintiff. *Id.*, p. 5.  Defendants further point to evidence showing that during his assignment to Food

---

[23]As an example, Defendant Kitson avers that in June 2003, he returned to the food service department from military duty and found that monthly performance pay had exceeded the allotted budget, and therefore he adjusted performance pay to stay within budget, an adjustment that resulted in numerous inmates, including Plaintiff, receiving less bonus pay than they had anticipated. Defendants' MSJ, Ex. 2, p. 3.  Consistent with Kitson's reasons for adjusting performance pay, Plaintiff's pay chart reflects he received no additional bonus pay June through August 2004.  *Id.*, p. 4.

Service between 2002 and 2004, Plaintiff was promoted twice, from Pay Grade Four to Pay Grade Three in March 2003 and from Pay Grade Three to Pay Grade Two in February 2004. Defendants' MSJ, Ex. 2, pp. 3-4. Additionally, in response to his final appeal to the Central Office, the National Inmate Appeals Administrator found there was "no evidence to support your allegation of discrimination and preferential treatment with respect to the issuance of pay grades." Defendants' MTD, Ex. 1, p. 14. Thus, the undersigned finds that Defendants have provided evidence that they have acted without discriminatory intent with respect to Plaintiff's assignments and pay grade levels within the food service department.

Therefore, the burden shifts back to Plaintiff to put forth evidence sufficient to allow a jury to find that "[D]efendants' reason is pretextual, *e.g.*, that it is unworthy of belief." *Mallard v. Tomlinson*, 2006 WL 3059939, at \*3. *See also Antonia v. Symgna Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) ("To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.").[24] Plaintiff has wholly failed in this regard.

---

[24]In the Title VII context, is showing of pretext must be made by reference to affidavits, deposition transcripts, or specific exhibits. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

In response to Defendants' evidence regarding the basis of Plaintiff's promotions and positions in food service, Plaintiff fails to present evidence sufficient to allow a jury to find that Defendant's reason is pretextual, *i.e.* unworthy of belief.  Although Plaintiff makes numerous assertions of racial discriminatory job promotions and pay grade level, he has failed to present any competent evidence to support such assertions.[25]  Plaintiff provides no basis for his knowledge of the alleged prejudicial job assignments or promotions nor does he provide affidavits from the employees who were allegedly promoted or retained at a higher pay level.  Such conclusory and unsupported allegations are insufficient to establish purposeful discrimination on the basis of race.  *See English*, 248 F.3d at 1010 (holding that allegations of racial prejudice were insufficient to carry the plaintiff's "burden of showing pretext" because it did not rebut the defendant's asserted non-discriminatory motivation).  Thus, the undersigned finds that Plaintiff has failed to create a genuine factual dispute as to pretext.  *See Mallard v. Tomlinson*, 2006 WL 3059939, at *4 (finding African-American inmate failed to show that he was treated less favorably than white employees during reduction in force ("RIF") in prison jobs, and inmate's "conclusory averments" failed to show that the "non-discriminatory reason for the RIF, the large loss of business, was a mere pretext"); *see also Hadley v. Taylor*, 2001 WL 1072092, at *1 (finding African-American inmate's evidence of earlier academic qualifications failed to establish that prison library manager's proffered reason for not hiring inmate as law clerk - poor temperament and

---

[25]For example, Plaintiff states that "[n]onblack inmates, hired a year after Plaintiff, were promoted and paid three times what the Plaintiff was being paid."  Complaint, p. 6.  Plaintiff relies only on his conclusory assertions without support by affidavit or other reliable evidence.

disposition - was pretextual, and was not relevant to the issue of whether manager honestly believed his asserted opinion).

Repeated, unsupported assertions by a plaintiff that a defendant's actions were based on race are insufficient to defeat summary judgment. *See L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact.").  The undersigned finds that under the three-part *McDonnell Douglas* framework, Plaintiff's conclusory and unsupported allegations are insufficient to create a genuine issue of material fact to avoid summary judgment in Defendants Low and Kitson's favor.   Accordingly, the undersigned recommends that summary judgment be granted to Defendants Low and Kitson on Plaintiff's equal protection claim of racial discrimination in Count Two.

### 2.  Racial Discrimination Claim Against Defendant Stufflebeam

In Count Two Plaintiff also claims that Defendant Stufflebeam arbitrarily and without complying with "the nondiscretionary language of the institutional policy" transferred Plaintiff on June 23, 2004, to the less desirable job in the dishroom and that  "no white inmates are moved with the proper paperwork" or "without Low or Kitson's prior approval." Complaint, p. 9.   Plaintiff contends that Stufflebeam's actions against him are part of her practice to "discriminate and retaliate against inmates for writing grievances." *Id.* (alleging that Defendant Stufflebeam disciplines and/or transfers fewer number of nonblack inmates).

Again assuming Plaintiff has established a prima facie case of discrimination,[26] the burden of production is shifted to Defendant Stufflebeam to articulate a legitimate, nondiscriminatory reason for Plaintiff's reassignment within food service.   Defendant Stufflebeam's sworn declaration provides a legitimate, nondiscriminatory reason for transferring Plaintiff:  "separation of plaintiff from the officer threatened" by the verbal altercation to "reduce[] the opportunity for further confrontation."  Defendants' MSJ, Ex. 6 (Stufflebeam Declaration).

Thus, Plaintiff must meet his burden to demonstrate that Defendant's Stufflebeam's proferred reason is pretextual.  Where a "plaintiff seeks to demonstrate that the employer's explanation is merely a pretext, th[e] court requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but was a disingenuous or sham reason."  *English*, 248 F.3d at 1010 (citations and quotations omitted).  For many of the same reasons that Plaintiff has failed to raise a fact issue with respect to his claim of retaliation against Defendant Stufflebeam, Plaintiff's claim that Stufflebeam used her position as a cook foreman to discriminate against Plaintiff fails as well.  As previously stated in connection with his retaliation claim, the undersigned finds that Plaintiff has presented nothing which casts doubt on Stufflebeam's averment that Plaintiff transfer was the result of his verbal confrontation on June 22, 2004.  Therefore, Plaintiff's claim that her

---

[26]As discussed above, there is no dispute that Plaintiff, a member of a protected class, was qualified for the pots and pans job in food service and that his performance in that position had been satisfactory for a significant period of time. Further, Plaintiff alleges that Stufflebeam transferred him to a less desirable job without following food service procedures as part of her practice to discriminate against nonwhite inmates.

alleged retaliation shows prejudice similarly fails to raise a material question of fact on the issue of pretext. Additionally, he has presented no evidence, such as affidavits, to support his claims that similarly situated nonblack inmates were treated differently for committing similar infractions. In short, Plaintiff's attempt to preclude summary judgment by making conclusory and unsupported allegations of racial discrimination fails to overcome Defendants' motion for summary judgment as to his discrimination claim against Defendant Stufflebeam.

D. <u>Due Process Claim Against Defendant Stufflebeam - Count Three</u>

Although his allegations in Count Three are not entirely clear, it appears that Plaintiff's substantive contention in Count Three is that on June 23, 2004, Defendant Stufflebeam transferred him from his pots and pans work assignment to the dishroom without sufficient procedural due process. Complaint, p.10.[27] In their motion for summary judgment, Defendants contend that Plaintiff's job change did not implicate the due process clause. Defendants' MSJ, p. 22. For the following reasons, the undersigned finds that

---

[27]In setting forth the legal bases of his claim in Count Three, Plaintiff inserts the buzz words of "equal protection," "retaliatory job transfer," "denial of equal treatment and protection," "to charge the Plaintiff without due process," "to create a motive for the retaliatory job transfer . . . ." Complaint, p. 10. However, he more specifically claims that the job transfer was conducted without the due process requirements of notice and an opportunity to defend against the "charge," prior to being "adjudged guilty of a violation and stigmatized." As supporting facts, Plaintiff describes the administrative remedy responses by Defendant Low and the warden of the prison upholding Plaintiff's job transfer by Stufflebeam and finding that the transfer took place after a verbal altercation with Stufflebeam. *Id.*

In his reply, Plaintiff's describes his claim in Count Three as: "Denial of Due Process and equal protection of the law in forming the charge that is the alleged basis for the retaliatory assignment transfer, a sanction for the exercise of the right to file a prison grievance." Plaintiff's Reply, p.1.

Defendant Stufflebeam is entitled to summary judgment on this claim because Plaintiff has failed to show that his due process rights were violated.

A due process violation cannot occur unless a prisoner has been deprived of a constitutionally-protected property or liberty interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). It is clearly established that prisoners do not have a protected liberty interest in a prison job. *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) ("prison regulations entitling prisoners to work do not create a constitutional liberty interest because a denial of employment opportunities to an inmate does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'") (citation omitted); *Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir. 1994) (holding that the loss of a prisoner's job did not result in a deprivation of liberty or property); *Ingram v. Papalia*, 804 F. 2d 595, 596-97 (10th Cir. 1986) ("[t]he Constitution does not create a property or liberty interest in prison employment"); *see also Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995). Likewise, a prisoner lacks any constitutional right to a certain pay level. *See Grover v. Helman*, No. 97-2273, 1999 WL 191503, at *1 (7th Cir. Mar. 25, 1999) (unpublished decision) (federal inmate's pay reduction did not implicate due process in *Bivens* action); *Izard v. Blair*, No. 97-6098, 1999 WL 96747, at *2 (6th Cir. Feb. 3, 1999) (unpublished decision) (because federal inmate had no constitutionally protected right to a particular prison wage, he lacked a liberty interest in its continuation). Because Plaintiff has

36

no protected interest in a prison job or a pay grade, he enjoys no due process right to its continuation.   "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *see also Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) ("Due Process is not an end in itself.").[28]

The undersigned finds that Plaintiff has failed to come forward with evidence raising any genuine issue of material fact as to whether Defendant Stufflebeam violated his right to due process prior to his job reassignment in food service.  *See Olim*, 461 U.S. at 250 (due process claim lacks merit when the deprivation of a substantive right has not been alleged). Therefore, it is recommended that Defendant Stufflebeam be granted summary judgment on this claim.

III.  Plaintiff's "Motion of Inquiry"

---

[28]To the extent Plaintiff's due process claim against Defendant Stufflebeam also rests on an alleged violation of a food service department policy or regulations – the failure to obtain signatures from supervisors and the approval of the assistant food supervisor on the June 23, 2004, job change request –  he fails to allege the violation of a constitutional right.  The federal constitution does not require prison officials to follow prison regulations or policy.  *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison regulations are "not designed to confer rights on inmates"); *Hovater v. Robinson*, 1 F. 3d 1063, 1068 n.4 (10th Cir. 1993) ("a failure to adhere to administrative regulations does not equate to a constitutional violation") (citation omitted).  Consequently, Plaintiff has failed to demonstrate that Defendant Stufflebeam violated his constitutional rights based on her failure to properly complete the  job change request form and obtain approval prior to Plaintiff's job reassignment.  *See Gilbreath v. Clark*, No. 05-1380, 2006 WL 1997636 (10th Cir. July 18, 2006) (unpublished decision) ("The defendants' alleged failure to follow prison rules in terminating [the plaintiff] from his job did not impose an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,' and thus did not implicate due process considerations.") (quoting *Sandin*, *supra*).

Following remand, Plaintiff filed a "Motion of Inquiry," [Doc. No. 63], in which he alleges that he filed a motion in this Court on April 24, 2007, seeking to "nullify" the appellate filing fees previously ordered by the Tenth Circuit.  According to Plaintiff, the Court has not ruled on his "motion to nullify," and therefore the prison staff continues to collect and disburse money from his prison account for payment of filing fees assessed on appeal.  Plaintiff requests that this Court "issue an order dismissing the cost of appellate filing fees in this cause, notify the custodians of this facility to discontinue collecting monies from the Plaintiff and have the clerk return the money accredited to the appellate filing fees." Plaintiff's Motion, p.2.[29]

Plaintiff has attached an order of the Tenth Circuit filed February 14, 2007, relating to Plaintiff's motion to proceed on appeal without prepayment of the $455.00 filing fee, which directed Plaintiff's custodian to deduct and pay to the clerk of the district court, pursuant to Plaintiff's consent, partial payments until the appellate filing fees are paid in full. Plaintiff's Motion, attached Tenth Circuit Order filed February 14, 2007, in *Reece v. Low et al.*, Case No. 06-6372.  Plaintiff has also attached an order from the appellate court denying Plaintiff's subsequent "Motion to Assess Costs of Appeal and Filing Fees to Appellees." Plaintiff's Motion, attached Tenth Circuit Order filed April 12, 2007.  The Circuit Court

---

[29]This Court's dockets do not show that Plaintiff filed a "Motion to Nullify" and the copy attached to his "Motion of Inquiry," although signed by Plaintiff and notarized on April 24, 2007, bears no filing stamp indicating that such pleading was filed in this Court. Therefore, the record belies Plaintiff's claim that the Court has failed to rule on the alleged "Motion to Nullify." However, for the reasons discussed herein, even if Plaintiff had properly filed the "Motion to Nullify Appellate Filing Fees," it would be recommended that such motion be denied.

explained that (1) the district court's judgment was vacated not reversed; (2) when a judgment is vacated, costs are awarded "only as the court orders";   (3) the federal appellate rules do not authorize reimbursement for filing fees; and (4) the appellate rules plainly provide that the filing fee is "taxable in the district court." *Id.* (quoting Rules 39(a)(3), 39(a)(4) and Rule 39(e)(4) of the Federal Rules of Appellate Procedure)).  The Circuit Court therefore denied the Plaintiff's motion "without prejudice to re-file" in the district court. *Id.*

Plaintiff provides no authority regarding his request that this Court "nullify" an order of the Tenth Circuit concerning the assessment and payment of appellate filing fees, and it clear that this Court is without authority to rescind an order of the Tenth Circuit Court of Appeals.  In any event, "[f]iling fees are part of the costs of litigation." *Lucien v. DeTella*, 141 F.3d 773, 775 (7th Cir. 1998).  Prisoner cases are no exception.  The plain language of the PLRA provides that when a prisoner "files an appeal in forma pauperis" a court shall assess and, when funds exist, collect, partial payments of "any court fees required by law," and the prisoner remains obligated to continue making partial filing payments until his appellate filing fee is paid in full.  28 U.S.C. § 1915(b).  The PLRA makes no provision for the return of fees partially paid or for cancellation of the remaining fee. *See Goins v. Decaro*, 241 F.3d 260, 261-62 (2d Cir. 2001) (rejecting a request for refund of appellate fees after voluntary withdrawal of appeal); *Lucien v. DeTalla*, 141 F.3d 773, 775 (7th Cir. 1998) ("Filing fees are part of the costs of litigation"); *Bell v. Clark*, 194 F.3d 781, 782 (7th Cir. 1999) ("no refund of filing fee just because an appellant, petitioner, or other seeker of judicial review is dissatisfied with the outcome of his quest").  With respect to that portion

of a prisoner's filing fee already paid by debiting his prison account, a refund claim encounters the barrier of sovereign immunity. *Goins*, 241 F.3d at 261 (citing 28 U.S.C. §§ 711(c), 751(e) (1994), which requires clerks of courts of appeals and district courts to pay all fees "into the Treasury"). In addition, there is no language in the PLRA granting judicial authority to cancel a prisoner's remaining indebtedness for appellate filing fees. *Id.* at 262. In any event, the docket record in this case shows that the appeal fee has been satisfied, rendering moot Plaintiff's request that any further payments of his appellate fee be cancelled. [Doc. No. 72].

Accordingly, to the extent Plaintiff, through his "Motion of Inquiry" [Doc. No. 63], seeks to "nullify" the Tenth Circuit's order and/or obtain an order directing a refund of the money he has paid toward the appellate filing fee, such motion should be denied.

## RECOMMENDATION

It is recommendation of the undersigned Magistrate Judge that Defendants' motion to dismiss [Doc. No. 35] based on Plaintiff's failure to exhaust his administrative remedies:

• be GRANTED as to the claims of retaliation against Defendants Low and Kitson in Count One, resulting in this claim being dismissed without prejudice, and DENIED as to Defendants Lager and Stufflebeam;

• be DENIED as to the racial discrimination and equal protection claims in Count Two as to Defendants Low, Kitson and Stufflebeam, and GRANTED as to Defendant Lager;

• be GRANTED as to the due process claim against Defendants Low and Kitson, in Count Three, resulting in this claim being dismissed without prejudice, and DENIED as to Defendant Stufflebeam.

It is further recommended that Defendants' motion for summary judgment [Doc. No. 34] be GRANTED on Plaintiff's claims of retaliation in Count One against Defendants Stufflebeam and Lager; GRANTED on Plaintiff's claims of racial discrimination in Count Two against Defendants Low, Kitson and Stufflebeam; and GRANTED on Plaintiff's due process claim in Count Three against Defendant Stufflebeam.   Finally, it is recommended that Plaintiff's "Motion of Inquiry" [Doc. No. 63] be DENIED.

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by the 19th day of June, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives any right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 30th day of May, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE